IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LINCOLN SAVINGS BANK,<br>A bank chartered under the Laws of<br>the State of Iowa,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>OPEN SOLUTIONS, INC.<br>A Delaware Corporation,<br><br>　　　　Defendant. | No. C12-2070<br><br>RULING ON MOTION TO STRIKE<br>AND DISMISS |

TABLE OF CONTENTS

I.   INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.  Are Lincoln's Counterclaims to Open Solutions' Counterclaims
         a Permissible Pleading? . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     B.  Were Lincoln's Fraud and Negligent Misrepresentation
         Counterclaims Timely? . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     C.  Did Lincoln's Counterclaims State Claims Upon Which Relief
         Can Be Granted? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.  Did Lincoln Adequately Plead Claims for Fraud and
             Negligent Misrepresentation? . . . . . . . . . . . . . . . . . . . 11
         2.  Are Lincoln's Counterclaims Barred By the Economic Loss
             Rule? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.   SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Motion to Strike and Dismiss Plaintiff's Counterclaim to the Counterclaims (docket number 36) filed by the Defendant on May 20, 2013, the Resistance (docket number 37) filed by the Plaintiff on June 6, and the Reply (docket number 38) filed by the Defendant on June 17. Pursuant to Local Rule 7.c, the issue will be decided without oral argument.

## II. PROCEDURAL HISTORY

On October 3, 2012, Plaintiff Lincoln Savings Bank ("Lincoln") filed a Complaint against Defendant Open Solutions, Inc. ("Open Solutions"). Lincoln is an Iowa banking corporation that operates twenty banking and financial services locations within Iowa. Open Solutions, a Delaware limited liability corporation, provides consulting services, software, and technology to banks and financial institutions, including systems for handling deposits and loan documentation.[1] Lincoln and Open Solutions entered into a written contract (the "Agreement") in December of 2010, wherein Open Solutions agreed to provide software and services to Lincoln. The Agreement is governed by Delaware law.

Lincoln sued on the Agreement, bringing claims for breach of written contract (Count I), breach of express warranty (Count II), breach of statutory express warranty (Count III), negligent misrepresentation (Count IV), and declaratory relief (Count V). Lincoln alleges the software it purchased from Open Solutions was unusable, and Open Solutions failed to provide the services or maintenance necessary for the software to function as intended. Complaint (docket number 2) at 3. On November 14, 2012, Open

---

[1] In its Resistance, Lincoln complains that the Answer and Counterclaim were filed by Open Solutions, LLC, not Open Solutions, Inc. Lincoln entered into the software contract at issue with Open Solutions, Inc. and named Open Solutions, Inc. as the defendant in its Complaint. However, in its Answer and Counterclaim, the defendant states that it is now known as Open Solutions, LLC.

Solutions filed a motion to dismiss Counts III and IV of Lincoln's Complaint, which were based on parol statements allegedly made before the parties entered into the Agreement. Because the terms of the Agreement disclaimed any warranties or representations not expressly set forth in the contract, the Court granted Open Solution's motion and dismissed Counts III and IV with prejudice

On March 27, 2013, Open Solutions filed an Answer and Counterclaim generally denying Lincoln's allegations, and asserting certain affirmative defenses. In its counterclaims, Open Solutions asserts claims for breach of contract (Count I) and declaratory relief (Count II). On April 26, 2013, Lincoln filed an Answer and Counterclaim to Open Solutions Counterclaims (docket number 31), generally denying Open Solutions' allegations and asserting two counterclaims in reply. In its counterclaims, Lincoln asserts claims for fraud (Count I) and negligent misrepresentation (Count II) based on statements allegedly made by Open Solutions after the parties entered the Agreement.

Meanwhile, on February 4, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan that set a March 29, 2013, deadline for amending pleadings. The trial is scheduled before the undersigned on February 1, 2014.

### III. RELEVANT FACTS

The issue raised by the instant motion is whether the Court should dismiss Lincoln's counterclaims to Open Solutions' counterclaims. As part of the Agreement, Lincoln purchased implementation services and a software license to use the "Velocity" software. The counterclaims are based on representations allegedly made by representatives of Open Solutions in regard to the implementation of the Velocity software product Lincoln purchased under the Agreement. The alleged misrepresentations concern Open Solutions' "ability to fully implement the Velocity software to fit [Lincoln's] needs." Lincoln's Answer and Counterclaim (docket number 31) at 9. The counterclaims allege that:

3

a. On or about October 4, 2011, Lynn from [Open Solutions] represented to Erik Skovgard at [Lincoln] that the forms [Lincoln] needed to fully implement the Velocity product would be complete and ready for full testing in November of 2011.

b. On or about November 3, 2011, Andy Kain from [Open Solutions] guaranteed to the "lending and Lincoln Savings Bank Velocity conversion Team" that the forms [Lincoln] needed to fully implement the Velocity product would be complete by the end of November.

c. On or about November 3, 2011, Andy Kain and Darlene Loucks from [Open Solutions] represented to the "Lending and Lincoln Savings Bank Velocity Conversion Team" that it would be easy to map forms to use within the Velocity product.

d. On or about November 3, 2011, Andy Kain and Darlene Loucks from [Open Solutions] represented to the "Lending and Lincoln Savings Bank Velocity Conversion Team" that [Lincoln] would be able to build risk based pricing trees and rate sheets within the decision engine component of Velocity.

e. On or around November 4, 2011, Lynn from [Open Solutions] represented that Velocity had no problem incorporating and handling checkboxes in its forms, which was a feature that [Lincoln] needed to fully implement the Velocity product.

Lincoln's Counterclaim to Counterclaims (docket number 31) at 9-10; ¶ 5.

Lincoln alleges that each of the representations were false in that the Velocity product was not ready by November 2011, Velocity could not handle checkboxes, and Lincoln was never able to build risk based pricing trees and rate sheets with Velocity. Lincoln's Answer and Counterclaim (docket number 31) at 13. Lincoln alleges that Open

4

Solutions knew the representations were untrue, and it made them "with the intent to induce [Lincoln] to spend extra time, energy, and money to implement Velocity to finance [Open Solutions's] development of the Velocity software instead of getting a refund for a product that would never work." Lincoln claims that as a result of Open Solutions' alleged misrepresentations, it sustained damages in excess of $355,180.00.

Open Solutions asserts that Lincoln's counterclaims to the counterclaims are not a permitted pleading, but rather constitute "an improper attempt to amend the pleadings without leave of court" in order to evade the March 29, 2013 deadline for amending pleadings. Open Solution's Motion to Strike and Dismiss (docket number 36) at 1. Open Solutions further asserts that even if counterclaims to counterclaims are permissible, Lincoln did not state a claim upon which relief can be granted. Open Solutions argues that Lincoln's counterclaims fail because Lincoln did not allege reliance on the misrepresentations, it did not plead particularized facts to support its claims of promissory fraud, and the counterclaims are barred by the economic loss rule.

## IV. DISCUSSION

Resolution of Open Solutions' Motion to Strike and Dismiss Lincoln's Counterclaims to the Counterclaims requires the Court to address three questions: First, are Lincoln's counterclaims to Open Solutions' counterclaims a permissible pleading; second, were Lincoln's fraud and negligent misrepresentation counterclaims timely; and third, did Lincoln state a claim upon which relief can be granted?

### A. Are Lincoln's Counterclaims to Open Solutions' Counterclaims a Permissible Pleading?

The FEDERAL RULES OF CIVIL PROCEDURE enumerate the pleadings parties are allowed to make in Rule 7(a). The Rule does not expressly provide for counterclaims in reply to counterclaims. *Erickson v. Horing,* 2000 WL 35500986 at *10 (D. Minn. 2000). Because Rule 7(a) does not list counterclaims to counterclaims as a pleading allowed under

5

the Rules, some courts have concluded that counterclaims to counterclaims are impermissible. *See Gonzalez v. Central Elec. Coop., Inc.*, 2009 WL 3415235 at *5 (D. Or. 2009). Still, several courts have recognized a counterclaim to a counterclaim as a valid pleading. For example, in *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, 2007 WL 1218701 at *2 (E.D. Mich. 2007), the Court concluded that "the plain language of Rules 7 and 13 compel the conclusion that counterclaims in reply are permissible." The Court explained that Rule 13 allows a party to raise a counterclaim in a pleading, and under Rule 7(a) a reply to a counterclaim is a permissible pleading; thus, a party may assert counterclaims in a reply to a counterclaim. *Id. See also Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 2007 WL 1521585, at *2 (D. Ariz. 2007); *Southeastern Ind. Tire Co. v. Duraprene Corp.*, 70 F.R.D. 585 (E.D. Pa. 1976).

Some courts, including the district courts in the Eighth Circuit that have considered the validity of counterclaims to counterclaims, have allowed plaintiffs to file counterclaims in reply when such counterclaims are compulsory and in response to permissive counterclaims. *See Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007). In *Feed Management Systems*, the defendants moved to dismiss the plaintiff's counterclaim, arguing that such a pleading is not authorized under FEDERAL RULE OF CIVIL PROCEDURE 7(a). The court denied the motion and concluded that "a counterclaim-in-reply is a permissible pleading when it is a compulsory reply to a permissive counterclaim." *Id.* (citing *Weitz Co., LLC v. MH Washington, LLC*, 2007 WL 1658677 at *1 (W.D. Mo. 2007)). *See also Erickson v. Horing*, 2000 WL 35500986 at *10 (D. Minn. 2000) ("Where the defendant has asserted a permissive counterclaim and the plaintiff's counterclaim would be considered a compulsory counterclaim in response, courts have permitted plaintiffs to file such claims."); *Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co.*, 175 F.R.D. 686, 687 (D. Kan. 1997) ("Some district courts

have allowed plaintiffs to include counterclaims in a reply, [but] those cases appear to involve compulsory counterclaims in reply to a defendant's permissive counterclaim.").

Lincoln argues that it should be allowed to assert its counterclaims because Open Solutions' counterclaims are permissive rather than compulsory. Lincoln's Brief (docket number 37-1) at 6. Under FEDERAL RULE OF CIVIL PROCEDURE 13(a), a compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The word "transaction" as used in Rule 13(a) refers to a series of occurrences that have a logical relationship. *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990). In *Tullos*, the Eighth Circuit Court noted that the "logical relation" test is one of the four tests that the Court had previously identified in *Cochrane Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979), as tests federal courts have applied in determining whether a counterclaim arises out of the same transaction or occurrence.[2] *Tullos*, 915 F.2d at 1995. The Court in *Tullos* used only the logical relation test to determine whether the defendant's counterclaim was compulsory explaining that "we agree with the majority of the federal courts that the logical relation test provides the needed flexibility for applying Rule 13(a)." *Id.*

Applying the logical relation test, the Court in *Tullos* concluded that the defendant's counterclaim arose out of the same transaction or occurrence as the plaintiff's claims. *Tullos*, 915 F.2d at 1996. The plaintiff had filed securities law claims after the defendant made a tender offer to buy a large amount of stock in a company, and the defendant

---

[2] In *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979), the Court set out the four tests as follows: First, "[a]re the issues of fact and law raised by the claim largely the same?" *Id.* Second, "[w]ould res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?" *Id.* Third, "[w]ill substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?" *Id.* Fourth, "[i]s there any logical relation between the claim and the counterclaim?" *Id.*

asserted counterclaims that stemmed from actions taken by the plaintiff in response to defendant's tender offer. *Id.* In concluding that the defendant's counterclaims had the necessary logical relationship to the plaintiff's claims, the Court reasoned that "all the claims asserted by both sides in this case are part of the fight between the parties for control of [two companies]." *Id.*

Here, Lincoln argues that Open Solutions' counterclaims do not arise out of the same transaction as Lincoln's claims. Lincoln asserts that although there appears to be a logical relationship between the two sets of claims, the relation is superficial because the facts and evidence necessary to prove each claim are distinct. Lincoln's Brief (docket number 37-1) at 7-8. However, as Open Solutions points out, Open Solutions' counterclaims arise out of the same contract as Lincoln Savings' initial claims. Lincoln brought claims for breach of contract (Count I), and Open Solutions counterclaimed for breach of the same contract. *See* Complaint (docket number 2) at 2; Answer and Counterclaim (docket number 27) at 11. Lincoln brought a claim for declaratory relief (Count V) to "ascertain, establish, and declare" the parties rights in relation to the yearly maintenance fees described in the Agreement, and Open Solutions' second counterclaim seeks a declaratory judgment on the same contract provision. *See* Complaint (docket number 2) at 7-8; Answer and Counterclaim (docket number 27) at 7-8. As in *Tullos* where the Court found a logical relationship between the two sides' claims because they were part of the same basic controversy between the parties, the claims in Lincoln's complaint and Open Solutions' counterclaims are all part of the same dispute over the Agreement. The Court finds that there is a logical relation between the two sets of claims, and that they arose out of the same transaction within the meaning of FEDERAL RULE OF CIVIL PROCEDURE 13(a). Thus, Open Solutions' counterclaims are compulsory.

Lincoln argues that even if the Court finds that Open Solutions' counterclaims are compulsory, Lincoln's counterclaims are still permissible. Lincoln cites *Southeastern*

*Industrial Tire Co., Inc. v. Duraprene Corp.*, 70 F.R.d. 585, 588 (E.D. Pa 1976), where the Court noted, in dicta, that a court should allow a counterclaim to a counterclaim even if it is a response to a compulsory counterclaim. In that case, however, the Court decided to strike the counterclaim because "it would be better to treat the counterclaim in reply as an amendment to the complaint." *Id.* Although few courts in the Eighth Circuit have considered the propriety of counterclaims to counterclaims, the relevant cases suggest that the Court should not allow counterclaims-in-reply where, as here, the plaintiff's counterclaims are in reply to compulsory counterclaims. *See Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007); *Erickson v. Horing*, 2000 WL 35500986 at *10 (D. Minn. 2000).

### B. Were Lincoln's Fraud and Negligent Misrepresentation Counterclaims Timely?

Although the Court concludes that Lincoln's counterclaims to Open Solutions' compulsory counterclaims are not a permitted pleading, several courts have treated counterclaims to counterclaims as an amendment to the pleadings. In *Erickson v. Horing*, 2000 WL 35500986 at *10 (D. Minn. 2000), the Court noted that even where courts found a counterclaim to a counterclaim permissible, they "preferr[ed] to treat such a pleading as an amendment to the complaint." *Id.* The *Erickson* Court stated that because the defendants' counterclaims were permissive rather than compulsory, the plaintiffs should have obtained permission to amend their complaint rather than filing counterclaims to counterclaims. *Id.* Although the Court in *Erickson* noted that it "need not sit idly by while the parties render its scheduling order meaningless," it allowed the claims made in the plaintiff's counterclaims to proceed forward in an amended complaint partly because the defendants had not objected to the plaintiffs' failure to obtain leave to amend at the time. *Id.* Similarly, in *Turner & Boisseau, Chartered v. Nationwide Mutual Insurance Co.*, 175 F.R.D. 686, 687 (D. Kan. 1997), the Court treated the plaintiff's counterclaim

in reply as a motion to amend its complaint under FEDERAL RULE OF CIVIL PROCEDURE 15(a). The Court stated that it would not "adopt [a] method of circumventing the limitations of Rule 15(a)" by allowing the plaintiff to assert a counterclaim in reply to a compulsory counterclaim. *Id.*

Rule 15(a) allows a party to amend a pleading after the time for amending as a matter of course "only with the opposing party's consent or with the court's leave." When a party asks for leave to amend outside of the court's scheduling order, meaning that the deadline for amending pleadings has passed, the party must show good cause under Rule 16(b). *Popoalli v. Corr. Med. Serv.*, 512 F.3d 488, 497 (8th Cir. 2008). Although Rule 15(a) provides for a lenient standard for amending pleadings, the Eighth Circuit Court has emphasized that pretrial scheduling orders "may be modified *only for good cause*" and that "application of Rule 16(b)'s good-cause standard is not optional" when a party seeks to amend a pleading after the scheduling deadline for amendments. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715-16 (8th Cir. 2008) (emphasis in original). In determining whether good cause exists, the primary consideration is the diligence of the moving party in attempting to meet the scheduling order's requirements. *Id.* at 717 (citation omitted). In *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005), the Court held the district court did not abuse its discretion in denying leave to amend under Rule 16(b) because the party had sufficient time to request an amendment to the scheduling order and "knew of the claims [it] sought to add when [it] filed the original complaint."

Here, Lincoln filed its counterclaims on April 26, 2013, nearly a month after the March 29 deadline to amend pleadings had passed. If Lincoln's counterclaims are construed as an application to amend its complaint — an approach taken by some courts that have addressed counterclaims to compulsory counterclaims — Lincoln asked for leave to amend the pleadings outside the Court's scheduling order. That is, Lincoln's counterclaims were not timely because they were effectively an application to amend a

pleading after the deadline for amending pleadings had passed. Further, Lincoln cannot show good cause to amend its complaint under Rule 16(b). As in *Barstad*, 420 F.3d at 883, where the Court found the party did not show good cause when it knew of the claims it sought to add at the beginning of the suit, Lincoln knew of its fraud and negligent misrepresentation claims in time to comply with the scheduling order. The claims are based on statements allegedly made by Open Solutions' representatives to Lincoln in 2011, and the implementation of the software purchased by Lincoln Savings. As Open Solutions points out, Lincoln knew of the facts giving rise to the claims in time not only to comply with the Court's scheduling order, but when it filed its initial complaint in October 2012. Thus, Lincoln was not diligent in complying with the Court's scheduling order and cannot show good cause as required to assert its untimely claims.

### C. Did Lincoln's Counterclaims State Claims Upon Which Relief Can Be Granted?

Even if Lincoln's claims are permitted and timely, Open Solutions argues that Lincoln's counterclaims for negligent representation and fraud fail to state a claim upon which relief can be granted. Open Solutions' Brief (docket number 36-1) at 5. First, Open Solutions asserts that Lincoln failed to adequately plead its counterclaims because it did not plead reliance on the alleged misrepresentations or assert the particularized facts necessary to support fraud and negligent misrepresentation claims based on promises. Second, Open Solutions asserts that even if adequately pled, the claims are barred by the economic loss doctrine.

#### 1. Did Lincoln Adequately Plead Claims for Fraud and Negligent Misrepresentation?

Under Delaware law, the elements of a fraud claim are:

> 1) a false representation, usually one of fact, made by the defendant;

11

2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

3) an intent to induce the plaintiff to act or to refrain from acting;

4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

5) damage to the plaintiff as a result of such reliance.

*Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). To establish a case for negligent misrepresentation, the plaintiff must satisfy the same elements as fraud except that it need not show that the defendant made the false representation knowingly or recklessly. *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. Super. Ct. 1996). Rather, negligent misrepresentation requires only a "failure to exercise reasonable care in obtaining or communicating information." *H-M Wexford LLC v. Encorp., Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003). Justifiable reliance is an element of both fraud and negligent misrepresentation claims. *Id.* at 142.

Under Delaware law, statements that are "merely promissory in nature and expressions as to what will happen in the future" generally cannot form the basis of a fraud or negligent misrepresentation claim. *Grunstein v. Silva*, 2009 WL 4698541 at *13 (Del. Ch. 2009). Rather, the misrepresentation normally must involve a "past or contemporaneous fact or a future event that falsely implies an existing fact." *Id.* (citation omitted). However, Delaware courts will "convert an unfulfilled promise . . . into a fraud claim" if the claimant pleads particularized facts that support an inference that the promisor had no intention of performing the promise at the time the promise was made. *Id.* In other words, an unfilled promise of future performance does not transform a contract claim into a fraud claim unless the speaker of the promise had no intention of carrying out the promise. *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008

WL 5352063 at *7 (Del. Ch. 2008). In *Outdoor Technologies, Inc. v. Allfirst Financial, Inc.*, 2001 WL 541472 at *4 (Del. Super. Ct. 2001), the Court dismissed the plaintiff's promissory fraud claim because the only evidence that the defendant had not intended to perform his promise was that he failed to do so. The Court noted that "ordinarily, in the absence of additional circumstances, it will be found that a mere failure to perform is as consistent with an honest intent as with a dishonest one." *Id.* (quoting *Murphy v. T.B. O'Toole, Inc.*, 87 A.2d 637, 638 (Del. Super. Ct. 1952)).

Open Solutions contends that Lincoln has failed to state a claim upon which relief can be granted because it failed to allege reliance, and it asserted claims based on promises without providing the necessary particularized facts to support an inference that Open Solutions did not intend to perform. Under FEDERAL RULE OF CIVIL PROCEDURE 9(b), plaintiffs must meet a heightened pleading standard when asserting a fraud claim. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(a). The "circumstances" of fraud include "the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (citation omitted). In short, the claim must identify the "who, what, where, when, and how" of the alleged fraudulent representation. *BJC Health Sys.*, 478 F.3d at 917 (citation omitted). Although Rule 9(b) establishes a heightened pleading standard for fraud, the Rule must be interpreted "in harmony with the principles of notice pleading." *Id.* (citation omitted). *See also Michaels Bldg. Co. v. Ameritrust, Co.* 848 F.2d 674, 679 (6th Cir. 1988) ("Given this backdrop admonition of simplicity in pleading, we note that the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim.").

Here, as Open Solutions points out, Lincoln did not expressly allege that it relied on the statements purportedly made by Open Solutions' representatives. In other words, Lincoln did not specifically state "what was obtained or given up" as the result of the alleged fraudulent representation. *See Abels*, 259 F.3d at 920. Lincoln argues that it sufficiently alleged reliance by asserting that Open Solutions made the representations "with the intent that [Lincoln] spend extra time, energy, and money to implement the Velocity software." Lincoln's Brief (docket number 37-1) at 11. Further, Lincoln argues that it pled reliance by: stating that it pushed the software's "go live" date back several times, stating that it made complaints to Open Solutions for over a year, and stating that it asked for a refund. *Id.* Lincoln claims that the statements adequately allege reliance because pushing the "go live" date back shows Lincoln "spent extra time trying to implement Velocity," making complaints shows Lincoln "spent extra energy in reliance on the misrepresentations by making complaints for almost a year in an effort to get Velocity to work," and asking for a refund shows Lincoln "spent considerable sums of money in reliance." *Id.* Although Lincoln could have alleged reliance in a clearer manner, its pleading still appears to give Open Solutions fair notice of the substance of Lincoln's claims. Lincoln's pleadings make it sufficiently clear that it claims Open Solutions' alleged representations that it would soon fully implement the Velocity software so that Lincoln could use it for certain functions caused Lincoln, in reliance, to continue using resources attempting to implement the software. Accordingly, Lincoln adequately pleaded "reliance."

However, Open Solutions alleges that Lincoln's pleading also fails because the fraud and negligent misrepresentation allegations are based on promises, and Lincoln did not plead particularized facts showing that Open Solutions did not intend to perform the promises when it made them. Lincoln counters that the representations were made "as present facts regarding the functionality of the Velocity software, which [Lincoln] could

enjoy once the software was fully implemented." Lincoln's Brief (docket number 37-1) at 12. Lincoln asserts in allegations (a) and (b) of the counterclaim that Open Solutions represented it would perform certain obligations by certain dates. These representations clearly constitute promises as they express Open Solutions' intent to carry out actions in the future. Similarly, allegations (c) and (d), that Open Solutions represented that Lincoln would be able to use Velocity for certain functions once it was implemented, also appear promissory. Allegation (c) asserts that Open Solutions represented that 'it would be easy" to use Velocity to map forms, and allegation (d) asserts Open Solutions represented that Lincoln "would be able to build risk based pricing trees and rate sheets." These statements seem to be promises concerning what Lincoln would be able to do with the Velocity software once it was implemented, and do not constitute representations of currently existing fact.

As Open Solutions points out, Lincoln did not plead particularized facts to support its assertion that Open Solutions did not intend to carry out these promises when it made them. *See Grunstein v. Silva*, 2009 WL 4698541 at *13 (Del. Ch. 2009) (requiring that a party asserting promissory fraud plead particularized facts leading to an inference that the promisor had no intention of performing the promise at the time the promise was made). Rather, Lincoln only states that it "is informed and believes and on that basis alleges that [Open Solutions] knew that the representations were untrue at the time they were made and that [Open Solutions] knew that Velocity was never intended to be used for agricultural and commercial loans." Lincoln's Answer and Counterclaim (docket number 31) at 9. Lincoln argues that it "provided the sufficient allegations" that Open Solutions did not intend to carry out its promises. Lincoln's Brief (docket number 37-1) at 13. Lincoln's unsupported allegations, however, do not contain any particularized facts supporting an inference that Open Solutions did not intend to perform. *See Commercial Property Investments, Inc. v. Quality Inns International, Inc.*, 61 F.3d 639, 644 (8th

Cir.1995) ("[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]."). Thus, by failing to plead the facts necessary to support its assertion that Lincoln never intended to carry out its promises, Lincoln did not adequately plead its fraud and negligent misrepresentation claims stemming from allegations (a) — (d).

Lincoln's allegation (e), however, that Open Solutions represented "Velocity had no problem incorporating and handling checkboxes" is not clearly promissory. While the alleged representations made in allegations (a) — (d) relate to future events or what Lincoln would be able to do with Velocity once Open Solutions completed implementation, the alleged representation in allegation (e) appears to be a statement of currently existing fact about Velocity's ability to handle checkboxes. In fact, while Open Solutions asserts that allegations "a., b., c., and d. cannot support claims for fraud or negligent misrepresentation" because they are "self-evidently promises or statements of future intent," Open Solutions failed to address allegation (e). *See* Open Solutions' Brief (docket number 36-1) at 7-8.

However, even if the alleged misrepresentation asserted in allegation (e) constitutes a false representation of fact rather than a promise, Lincoln still had to satisfy the heightened pleading standard of FEDERAL RULE OF CIVIL PROCEDURE 9(b). Under Rule 9(b), a party must plead the "who, what, where, when, and how" of the alleged fraudulent representation. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Here, Lincoln provided names, approximate dates, and the contents of the alleged representations. *See* Lincoln's Answer and Counterclaim (docket number 37-1) at 9. It did not, however, state where the representations occurred. The location of the alleged misrepresentation is one of the "circumstances constituting fraud" that a party must specifically allege in order to satisfy Rule 9(b). *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920. Thus, by failing to assert the particularized facts necessary to sustain

a promissory fraud claim and by neglecting to provide the location of the alleged representations, Lincoln did not adequately plead its claims for fraud and negligent misrepresentation.

### 2. Are Lincoln's Counterclaims Barred By the Economic Loss Rule?

Even if Lincoln adequately stated claims for fraud and negligent representation, Open Solutions argues that the claims are barred by the economic loss rule. The economic loss rule is a judicially created doctrine that "prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged." *Brasby v. Morris*, 2007 WL 949485 at *7 (Del. Super. Ct. 2007). The rule is applicable in "nearly any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item." *Int'l Fid. Ins. Co. v. Mattes Elec., Inc.*, 2002 WL 1400217 at *1 (Del. Super. Ct. 2002). In other words, the doctrine applies where the plaintiff sustains only economic loss which includes "any monetary loss, costs of repair or replacement, loss of employment, loss of business or employment opportunities, loss of good will, and diminution in value." *Brasby*, 2007 WL 949485 at *6 (citation omitted). Delaware courts have stated that the rule is "especially suited" to situations where privity of contract exists. *Danforth v. Acorn Structures, Inc.* 608 A.2d 1194, 1200 (Del. 1992).

Delaware courts have recognized fraud claims as an exception to the economic loss rule, however, in some circumstances. *Brasby*, 2007 WL 949485 at *7. Still, in order for a plaintiff to assert a tort claim in addition to a contract claim, the plaintiff must allege that the defendant breached a duty that is independent of the defendant's duties under the contract. *McKenna v. Terminex Intern. Co.*, 2006 WL 1229674 at *2 (Del. Super. Ct. 2006). Thus, the fraud exception applies only when fraud allegations "go directly to the inducement of the contract, rather than its performance." *Id.* In *Brasby*, for example, the Court applied the economic loss rule to dismiss the plaintiff's fraud claim because the

fraud allegations "focused exclusively on the performance of the contract" between the parties for the construction of a house. *Id.* at 8. The Court noted that the defendant's allegedly fraudulent statements and assurances about the progress, construction, and completion of the house all occurred after the formation of the contract. *Id.* The Court concluded that the fraud allegations did not arise independently of the contract, but rather "relate directly to the performance of the contract and are better addressed by applicable contract law." *Id.*

Here, as Open Solutions points out, Lincoln alleges only economic losses. It has not alleged damage to persons or property other than the bargained for software, but rather seeks to recover for monetary losses sustained in attempting to implement the software purchased under the Agreement. Although Lincoln points out that fraud claims can be an exception to the economic loss rule, Lincoln's counterclaims do not allege fraud in the inducement of the contract.[3] Rather, Lincoln argues that the economic loss doctrine does not bar its claims because Open Solutions' "fraudulent misrepresentations involved independent duties of what [Open Solutions] agreed to do under the Agreement." Lincoln's Brief (docket number 37-1 at 15). Lincoln argues that its fraud claims arise independently of the underlying contract because the alleged misrepresentations "go far beyond the [contract] duty to successfully implement the Velocity software," and "go to the functionality of the Velocity product once implemented." *Id.* Considering that Open Solutions' success in fully implementing the software determines its functionality, the Court finds unpersuasive the distinction drawn by Lincoln. Lincoln and Open Solutions

---

[3] In Lincoln's Complaint, Counts III and IV allege that Open Solutions made false representations about the Velocity software in order to induce Lincoln into entering the Agreement. However, because the terms of the Agreement disclaimed any representations or warranties not expressly set forth in the contract, the Court dismissed Counts III and IV with prejudice. *See* Order Granting Motion to Dismiss (docket number 26).

had a contract under which Open Solutions agreed to implement a workable version of its Velocity software. The alleged misrepresentations relate directly to the performance of the contract, as they all implicate Open Solutions' contract duty to implement functional Velocity software. As in *Brasby* where the Court found that statements made after the formation of a contract did not create independent duties, the statements allegedly made by Open Solutions occurred after the formation of the Agreement and related directly to its performance. Thus, Lincoln's claims are barred by the economic loss rule and do not state a claim upon which relief can be granted.

## V. SUMMARY

In conclusion, the Court finds that Lincoln's counterclaims to Open Solutions' counterclaims should be dismissed. Counterclaims in reply to counterclaims are permissible only as a response to permissive counterclaims, but here Open Solutions asserted compulsory counterclaims. Open Solutions' counterclaims were compulsory because they arose out of the same transaction as the claims asserted in Lincoln's complaint. Thus, Lincoln's counterclaims to the counterclaims are not a permissible pleading. If the Court treats Lincoln's counterclaims as an application to amend the complaint, the claims are untimely because the deadline for amending pleadings passed. Thus, Lincoln must show good cause to amend its pleading under FEDERAL RULE OF CIVIL PROCEDURE 16(b), and Lincoln cannot do so because it knew of the facts giving rise to its claims in plenty of time to comply with the Court's scheduling order.

Even if the Court concluded that Lincoln's counterclaims were permissible and timely, the counterclaims would still fail as a matter of law because they do not state claims upon which relief can be granted. Lincoln appears to have inadequately pled its fraud and negligent misrepresentation claims by failing to assert the particularized facts necessary to sustain promissory fraud claims, and by neglecting to state the location of the alleged misrepresentations, thus failing the particularity requirement of FEDERAL RULE OF

19

CIVIL PROCEDURE 9(b). Finally, if Lincoln had adequately pled its claims, they would be barred by the economic loss doctrine. Lincoln has alleged only economic losses resulting from the alleged misrepresentations, and the allegations relate directly to the performance of the contract between the parties. Lincoln's claims do not fall under the fraud exception recognized by Delaware courts because they do not arise from a breach of duty independent of the contract. Therefore, Lincoln's fraud and negligent misrepresentation claims must be dismissed.

## *VI. ORDER*

IT IS THEREFORE ORDERED that the Motion to Strike and Dismiss (docket number 36) filed by Defendant Open Solutions is **GRANTED**.

DATED this 8th day of July, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA